UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA SMITH<br>2245 Sterling Road<br>Creston, Ohio 44217 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| AHF OHIO INC.<br>806 E. Washington Street<br>Medina, Ohio 44256 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **SERVE ALSO:**<br>Dinsmore Agent Company<br>Statutory Agent<br>191 W. Nationwide Blvd., Suite 300<br>Columbus, Ohio 43215 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| MATT LEHMANN<br>806 E. Washington Street<br>Medina, Ohio 44256 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Pamela Smith, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## **PARTIES**

1. Pamela Smith is a resident of the Village of Creston, County of Wayne, State of Ohio.

2. Defendant AHF Ohio Inc. ("AHF") is an Ohio corporation for non-profit.

3. At all times herein, AHF operates a place of business at 806 E. Washington Street, Medina, Ohio 44256.

4. During all times material to this Complaint, AHF was an "employer" within the meaning of R.C. § 4112.01(A)(2).

5. Defendant Matt Lehmann ("Lehmann") was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at AHF who acted directly or indirectly in the interest of AHF.

6. Lehmann was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

## JURISDICTION & VENUE

7. This court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Smith is alleging Federal Law Claims under the Americans with Disabilities Act of 1990, as amended, and the Americans with Disabilities Amendments Act.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Smith's state law claims pursuant to 28 U.S.C. § 1367 as Smith's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. All of the material events alleged in this Complaint occurred in Medina County.

10. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, because it is the district court for the district, division, and counties within the Defendants operate and conduct business, and within which a substantial part of the events or omissions giving rise to the claim occurred.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against AHF, Charge No. 532-2018-02592.

13. Smith received a Right to Sue letter from the EEOC on August 17, 2020, in accordance with 42 U.S.C. 2000e-5(f)(1), which is attached hereto as Exhibit 1.

14. Smith has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

15. Smith filed her Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

## FACTS

16. Smith is a former employee of AHF.

17. Smith was hired by AHF on April 30, 2018.

18. Smith was hired as a business office manager at AHF.

19. Smith was hired by Rhonda Holmes.

20. Smith was qualified for her hired position as a business office manager.

21. Smith is a disabled veteran.

22. Smith served in the Navy and Army National Guard from 1997 through 2009.

23. Smith received an honorable discharge in 2009.

24. As a result of Smith's military service, Smith developed Post traumatic Stress Disorder, anxiety and depression.

25. Smith has a disability rating from the Veteran's Administration.

26. Smith has Post Traumatic Stress Disorder.

27. Smith has depression.

28. Smith has anxiety.

29. Smith's PTSD, anxiety and depression substantially limit one or more of her major life activities, including working.

30. Smith can perform the essential functions of her job, with or without accommodation.

31. Smith has a record of her disabilities and/or impairments.

32. Smith informed AHF about her medical conditions.

33. Smith is disabled within the meaning of R.C. § 4112.01 *et seq.*

34. Smith is disabled within the meaning of the ADA.

35. In the alternative, AHF perceived Smith to be disabled.

36. In the alternative, AHF perceived Smith to have a physical and/or mental impairment.

37. Smith has a service dog for her disabilities.

38. On May 10, 2020, Smith advised Holmes that Smith has a service dog.

39. Holmes was Smith's immediate supervisor.

40. During the Accommodation Request, Smith requested that she be permitted to bring her service dog to work ("Accommodation Request.")

41. Smith's Accommodation request did not cause undue hardship on Defendants.

42. Defendants did not determine if Smith's Accommodation Request would cause an undue hardship.

43. Defendants have no contemporaneously created documents reflecting any effort to determine if Smith's Accommodation Request would cause an undue hardship.

44. Holmes requested that Smith submit paperwork from Smith's doctor about Smith's Accommodation Request.

45. Holmes suggested that Smith be given a separate workspace so that Smith's service dog would not interfere with normal business operations.

46. On May 31, 2018, Smith submitted documentation for Smith's Accommodation Request.

47. Holmes approved Smith's Accommodation Request.

48. Smith began bringing her service dog to work regularly without incident.

49. On July 23, 2018, Smith received a 90-day review and received above average scores.

50. Smith requested additional training for her duties.

51. Lehmann was the Director of Operations at AHF.

52. Lehmann was a supervisor over Smith.

53. Lehmann was a supervisor over Holmes.

54. On August 16, 2018, Lehmann appeared in Smith's office.

55. Lehmann observed Smith's service dog.

56. Lehmann became visibly upset seeing Smith's service dog.

57. Lehmann asked Smith is Smith was "crazy or something."

58. Smith explained that she had a service dog, that Smith had submitted the necessary paperwork to AHF, and that Smith had been permitted to have her service dog at work.

59. Smith offered to submit additional documentation regarding her Accommodation Request.

60. Lehmann told AHF employees that he did not want a dog in his nursing home.

61. On August 17, 2018, Lehmann emailed Holmes requesting information about Smith's Accommodation Request.

62. On August 17, 2018, Lehmann emailed Holmes asking why Smith needed her service dog.

63. Holmes requested the accommodation paperwork from Smith.

64. Smith was concerned by Holmes request and asked if her service dog was an issue.

65. Holmes told Smith that Smith's service dog was not an issue.

66. Holmes submitted the accommodation paperwork to Lehmann.

67. Holmes advised Lehmann that Holmes believed any further discussion about Smith's disability accommodations would be in violation of the ADA.

68. Smith objected to the disability discrimination at the hands of Lehmann that was brought to her attention at AHF.

69. Smith reported the disability discrimination at the hands of Lehmann that was brought to her attention at AHF.

70. On August 27, 2018, Smith notified John Yates that she would be bringing her service dog to training on August 28, 2018.

71. Yates told Smith that Smith was not permitted to bring her service dog to training.

72. Smith objected to being denied her disability accommodation.

73. Smith submitted another letter from her doctor explaining Smith's disability and need for her service dog.

74. On August 27, 2018 or August 28, 2018, Holmes was terminated from her position at AHF due to Holmes's objection to Lehmann and AHF's handling of Smith's disability accommodations.

75. Holmes told Smith that Holmes was terminated because Holmes stuck up for Smith and for providing Smith disability accommodations.

76. On August 28, 2018, Janice Collins became Smith's new supervisor.

77. Collins met with Smith on August 29, 2018.

78. During the August 29, 2018 meeting, Collins asked numerous intrusive, personal questions about Smith's disability.

79. Collins' questions made Smith uncomfortable.

80. Smith objected to Collins' questions about Smith's disability.

81. Smith told Collins that Smith was a disabled veteran and that her dog was a service dog.

82. On August 30, 2018, Collins again met with Smith.

83. During the August 30, 2018 meeting, Collins accused Smith of using her disability as an excuse for Smith's work performance.

84. During the August 30, 2018 meeting, Smith told Collins that Smith felt that she was being targeted because Smith had a service dog.

85. Prior to August 28, 2018, Smith had no performance write-ups or coaching.

86. As a result of the August 30, 2018 meeting, Smith had a panic attack while at work.

87. Smith emailed Collins to advise Collins that Smith was leaving work and going to the hospital.

88. Smith sent two additional emails to Collins regarding Smith's panic attack.

89. On August 31, 2018, Smith received a verbal counselling.

90. On September 6, 2018, Smith reported for work and assisted state investigators in an audit of AHF by providing requested documents.

91. At the end of the day on September 6, 2018, Collins told Smith that Smith was being suspended without pay.

92. Collins took Smith's keys and ID badge.

93. Collins told Smith to report to AHF on September 10, 2018.

94. Smith reported to AHF on September 10, 2018.

95. When Smith arrived at AHF, Smith noticed that she was locked out of her office.

96. Smith reported to Collins and Lehmann.

97. Collins accused Smith of failing to notify Collins of Smith's emergency departure on August 30, 2018.

98. Collins accused Smith of having poor work performance.

99. Collins handed Smith a write-up.

100. Smith began to have a panic attack.

101. Smith refused to sign the write-up.

102. Lehmann told Smith that she was terminated.

103. Defendants knowing skipped progressive disciplinary steps in terminating Smith.

104. Defendants knowingly terminated Smith's employment.

105. Defendants knowingly took an adverse employment action against Smith.

106. Defendants knowingly took an adverse action against Smith.

107. Defendants intentionally skipped progressive disciplinary steps in terminating Smith.

108. Defendants intentionally terminated Smith's employment.

109. Defendants intentionally took an adverse employment action against Smith.

110. Defendants intentionally took an adverse action against Smith.

111. Defendants knew that skipping progressive disciplinary steps in terminating Smith would cause Smith harm, including economic harm.

112. Defendants knew that terminating Smith would cause Smith harm, including economic harm.

113. Defendants willfully skipped progressive disciplinary steps in terminating Smith.

114. Defendants willfully terminated Smith's employment.

115. Defendants willfully took an adverse employment action against Smith.

116. Defendants willfully took an adverse action against Smith.

117. Defendants skipped levels in their progressive discipline system when they terminated Smith.

118. Skipping levels in the progressive disciplinary system is an adverse employment action.

119. Skipping levels in the progressive disciplinary system is an adverse action.

120. Termination is an adverse employment action.

121. Termination is an adverse action.

122. Defendants' assertion of the Stated Basis for Termination has no basis in fact.

123. Defendants knew that the Stated Basis for Termination was false.

124. Defendants' assertion of the Stated Basis for Termination did not actually motivate Defendants' decision to terminate Smith.

125. Defendants' assertion of the Stated Basis for Termination was insufficient to motivate the termination of Smith.

126. There was a causal connection between Smith's request for disability accommodations, her use of disability accommodations, and her termination.

127. There was a causal connection between Smith's disabilities and her termination.

128. At the time of her termination, Smith was qualified for her position.

129. After her termination, upon information or belief, AHF replaced Smith with an employee that did not require disability accommodations.

130. As a result of Defendants' unlawful acts, Smith has suffered, and will continue to suffer, pecuniary harm.

131. As a result of Defendants' unlawful acts, Smith has suffered, and will continue to suffer, emotional distress.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND AMENDMENTS ACT

### (Against Defendant AHF Only)

132. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Defendant AHF is a qualified employer under the ADA.

134. Smith is a qualified employee under the ADA.

135. Smith is a member of a statutorily protected class based on her disability under the Rehabilitation Act of 1973 § 504 and the Americans with Disabilities Act of 1990.

136. Smith has PTSD.

137. Smith has anxiety.

138. Smith has depression.

139. Smith is disabled.

140. Smith has a record of her disabilities.

141. Smith's conditions constituted a mental and/or physical impairment.

142. Smith informed AHF of her medical conditions.

143. Defendant AHF perceived Smith as being disabled.

144. Smith's condition substantially limited one or more of her major life activities including working.

145. Alternatively, Defendant AHF perceived Smith's condition to substantially limit one or more of her major life activities including working.

146. Defendant AHF discriminated against Smith based on her actual or perceived disability.

147. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by treating Smith differently than other similarly situated employees based on her disability.

148. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by discriminating against Smith due to her disability.

149. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by using Smith's disability as a factor when evaluating her performance.

150. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by applying disciplinary policies in a disparate manner based on an employee's status as disabled or non-disabled.

151. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by failing to engage in a dialogue with Smith regarding potential reasonable accommodations.

152. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by failing to provide Smith with reasonable accommodations for her disability.

153. Defendant AHF violated 42 U.S.C. § 12101 *et seq.* by retaliating against Smith for using reasonable accommodations for her disability.

154. On or about September 10, 2018, Defendant AHF terminated Smith without just cause.

155. Defendant AHF terminated Smith because of her disabilities in violation of the Americans with Disabilities Act of 1990 and/or 42 U.S.C. § 12101 *et seq.* and/or the ADA Amendments Act.

156. Defendant AHF terminated Smith because of her disability accommodations in violation of the Americans with Disabilities Act of 1990 and/or 42 U.S.C. § 12101 *et seq.* and/or the ADA Amendments Act.

157. As a direct and proximate result of Defendant AHF's conduct, Smith suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT II: DISABILITY DISCRIMINATION UNDER R.C. § 4112.01 *ET SEQ.***
### **(Against Defendant AHF Only)**

158. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

159. AHF was an employer as defined by R.C. § 4112.01(A)(2).

160. Smith has PTSD.

161. Smith has anxiety.

162. Smith has depression.

163. Smith is disabled.

164. Smith has a record of her disabilities.

165. Smith's conditions constituted a mental and/or physical impairment.

166. Smith informed AHF of her medical conditions.

167. Defendant AHF perceived Smith as being disabled.

168. Smith's condition substantially limited one or more of her major life activities including working.

169. Alternatively, Defendant AHF perceived Smith's condition to substantially limit one or more of her major life activities including working.

170. Defendant AHF discriminated against Smith based on her actual or perceived disability.

171. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by treating Smith differently than other similarly situated employees based on her disability.

172. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by discriminating against Smith due to her disability.

173. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by treating Smith differently than other similarly situated employees based on his disability.

174. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by discriminating against Smith due to her disability.

175. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by using Smith's disability as a factor when evaluating her performance.

176. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by applying AHF testing procedures in a disparate manner based on an employee's status as disabled or non-disabled.

177. Defendant AHF violated Ohio Revised Code § 4112.01 *et seq.* by applying disciplinary policies in a disparate manner based on an employee's status as disabled or non-disabled.

178. On or about September 10, 2018, Defendant AHF terminated Smith without just cause.

179. At all times material herein, similarly situated non-disabled employees were not terminated without just cause.

180. Defendant AHF terminated Smith based on her actual and/or perceived disability.

181. Defendant AHF violated Ohio R.C. § 4112.02 when they terminated Smith based on her actual and/or perceived disability.

182. As a direct and proximate result of Defendant AHF's conduct, Smith has suffered and will continue to suffer damages, including economic and emotional distress damages.

183. As a direct and proximate cause of Defendants AHF's conduct, Smith is entitled to all damages, including liquidated damages, costs and reasonable attorney's fees.

### COUNT III: DISABILITY DISCRIMINATION UNDER R.C. § 4112.01 *ET SEQ.*
### (Against Lehmann Only)

184. Smith restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

185. Lehmann committed unlawful disability discrimination against Smith.

186. As a result of the discrimination against Smith, Smith was terminated.

187. Lehmann aided, abetted, incited, compelled and/or coerced Defendant AHF into discriminating against and wrongfully terminating Smith.

188. Pursuant to R.C. § 4112.02(J), it is an unlawful discriminatory practice, "For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawfully discriminatory practice, to obstruct or prevent any person from complying with this Chapter or any order issued under it, or to attempt to directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

189. As a direct result of Defendant Lehmann's conduct, Smith has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: RETALIATORY DISCRIMINATION

190. Smith restates each and every prior paragraph of this complaint, as if it were fully restated herein.

191. As a result of the Defendant's discriminatory conduct described above, Smith complained about the disability discrimination that she faced.

192. Subsequent to Smith's reporting of disability discrimination to her supervisors, Smith was terminated from her position at AHF.

193. Defendant's actions were retaliatory in nature based on Smith 's opposition to the unlawful discriminatory conduct.

194. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

195. Smith suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

196. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Smith, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Smith demands from Defendants the following:

(a) Issue an order requiring AHF to restore Smith to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Smith for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Smith claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/Angela Rodriguez*
Brian D. Spitz (0068816)
Angela Rodriguez (0074432)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: angela.rodriguez@spitzlawfirm.com
brian.spitz@spitzlawfirm.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff Pamela Smith demands a trial by jury by the maximum number of jurors permitted.

> */s/Angela Rodriguez*
> Angela Rodriguez (0074432)